# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

COURT FILE NO: _____

| | |
|---|---|
| Richard Bodnar<br><br>      Plaintiff,<br><br>v.<br><br>Capital Management Services L P; Ronald Terceros<br><br>      Defendants | **COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), violations of Minnesota and other state laws, and the invasions of Plaintiff's personal privacy by these Defendants in their illegal efforts to collect a consumer debt.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff Richard Bodnar is a natural person who resides in the City of Savage, County of Scott, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Capital Management Services L P, (hereinafter referred to as "CMS") is

a corporation who according to the Minnesota Department of Commerce is a debt collection agency currently licensed by the State of Minnesota with an address of 698 ½ South Ogden Street in Buffalo, NY with a zip code of 14206. According to the Minnesota Department of Commerce, CMS's collection agency license number is 20593312. CMS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6. Defendant Ronald Terceros (hereinafter referred to as "RT") is a natural person who was an individual representative of CMS and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). According to the Minnesota Department of Commerce, RT's debt collector's license number is 20614093.

### FACTUAL ALLEGATIONS

7. On December 10, 2012, Defendants caused a telephone call to be placed to communicate with the Plaintiff's attorney, William T. Anderson. The phone number called was the cell phone number belonging to the Plaintiff's attorney.

8. When Plaintiff's attorney answered his phone, RT began by asking to speak with William Anderson. When Mr. Anderson identified himself, RT continued by stating as follows:

> Mr. Anderson, my name is Ronald Terceros. I am a senior rep with capital Management Services in New York. I was actually given your information regarding a Richard Bodnar. I am calling to verify if you are currently representing him?

9. Mr. Anderson replied, "I am."

10. RT continued, "OK, now, 'cuz we want to go ahead and forward information to you." RT continued on to ask Mr. Anderson to verify Mr. Bodnar's identity.

11. Mr. Anderson sufficiently verified Mr. Bodnar's identity. During the exchange, when Mr. Anderson stated "I assume that you have spoken with Mr. Bodnar," RT stated emphatically that "We didn't speak with Mr. Bodnar. The file was forwarded over here to us. But, there is still a verification process so that we can replace all of his information with yours. We only received the phone number and a name."

12. Mr. Anderson then asked, "Did the phone number and the name indicate that I am his attorney."

13. RT said "uhhuh."

14. Mr. Anderson twice reiterated his question with "Did it?" before RT said words to the effect, "It just gave us a phone number to contact."

15. Mr. Anderson rephrased his question, "But did it also indicate that I'm his attorney."

16. RT finally replied "It indicated that there was a possibility that there was a counsel."

17. Mr. Anderson then confirmed RT's name, its spelling, the name of the company ("Capital Management Services"), the company's address, the company's phone number.

18. During that exchange, Mr. Anderson asked "Are you a debt collector?"

19. RT answered, "Correct."

20. Mr. Anderson further clarified by asking, "Are you a third party debt collector?"

21. RT answered, "Correct."

22. Mr. Anderson asked if CMS purchased the debt to which RT replied no.

23. RT asked Mr. Anderson for his address. Mr. Anderson provided his mailing address of "P.O. Box 1179, Chanhassen, MN 55317."

24. RT then stated words to the effect that "We always inform all parties, including attorneys, that this is an effort to collect on a debt and that any information would be used for that purpose. Calls are recorded and monitored for quality assurance."

25. Mr. Anderson took issue with the timing of the so-called "mini-miranda." During that exchange, RT reiterated that he was calling from a third party collection agency.

26. Mr. Anderson also indicated that he represented Mr. Bodnar for the purpose of defending Mr. Bodnar against any collection efforts related to debts. Mr. Anderson also indicated that he would hold debt collectors accountable for any FDCPA violations.

27. Prior to December 10, 2012, Mr. Bodnar had retained Attorney William T. Anderson to represent him with regards to legal issues related to debts, including debts with Citibank. The Retainer between Mr. Anderson and Mr. Bodnar included representation for filing for Chapter 7 bankruptcy protection, if necessary. The Retainer also included representing Mr. Bodnar for pursuing claims against debt collectors who violated the Fair Debt Collection Practices Act. The Retainer also included representing Mr. Bodnar with respect to receiving communications from debt collectors.

28. RT indicated that he understood the nature of Mr. Anderson's representation of Mr. Bodnar. RT then stated, "And, we will get some correspondence out to

you."

29. Mr. Anderson then asked, "I assume that this is the first attempt to collect on the debt from you guys?"

30. RT replied, "Uh, we received the information back in October, right."

31. Mr. Anderson rephrased his question, "But, is this the first attempt you have had to collect on the debt?"

32. RT assented, "The first communication."

33. Mr. Anderson again tried to clarify, "So, this is the first" at which point RT interjected "right." RT essentially represented that his phone call was the first communication regarding the debt. He deceptively allowed Mr. Anderson to continue to operate under that belief, even though RT knew that previous attempts to collect had been committed by CMS.

34. Mr. Anderson immediately and pointedly reminded RT of CMS's obligations under the law to provide certain initial documentation within 5 days as required by the FDCPA.

35. No such letters were sent to Mr. Anderson.

36. On December 9, 2013, in a review of previous phone communications, Mr. Anderson reviewed his information regarding the phone conversation with RT. He noted that no letters had been received from CMS regarding the collection of the debt.

37. On December 9, 2013, Mr. Anderson called CMS to inquire about the letters sent on Mr. Bodnar's account.

38. After briefly discussing the matter with a couple of representatives, Mr.

Anderson spoke with a supervisor named April Starr. Ms. Starr indicated that letters had in fact been sent related to the Mr. Bodnar's account on October 4, 2012 and again on November 16, 2012.

39. Given that CMS did not have Mr. Anderson's address on the file before the December 10, 2012, conversation, the letters would not have been sent to Mr. Anderson. Ms. Starr stated words to the effect that she didn't believe that the notices were sent to Mr. Anderson. Instead, she stated words to the effect that the letters would have gone out to the customer, Mr. Bodnar.

40. Upon information and belief, CMS sent the two letters to Mr. Bodnar.

41. Given that RT indicated that CMS's file had Mr. Anderson's name, phone number, and indication of attorney representation, CMS knew Mr. Bodnar was represented by an attorney and that any communications regarding the debt should have been directed to Mr. Anderson.

42. According to Ms. Starr, the debt was related to a Citibank Mastercard, ending in 7035. That particular debt had been incurred primarily for personal, family or household purposes, and which had gone into default. The account is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

43. In the absence of consent, 15 U.S.C. § 1692c(a)(2) forbids a debt collector from communicating with a consumer "if a debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and addesses."

44. The Plaintiff's attorney's name and contact information was readily ascertainable to the Defendants; however, CMS willfully ignored the information in its own

file and instead chose to communicate directly with Mr. Bodnar via letters.

45. In addition to communicating directly with Mr. Bodnar with the letters, RT provided false and misleading information to Mr. Anderson. Specifically, RT indicated that the first attempt to collect was the phone conversation on December 10, 2012. That was NOT true. Moreover, the misleading statement was intended to draw attention away from the other violations, specifically the previous illegal communications that violated the FDCPA.

46. RT has a long history of working as a debt collector. According to the Minnesota Department of Commerce, RT was first licensed to collect debts in Minnesota on January 23, 2007. Presumably, over a nearly six year work history of collecting debts, RT became extremely familiar with the FDCPA's requirements and could readily recognize violations of the FDCPA. Upon information and belief, RT did in fact recognize the illegal communications with a represented party and intentionally provided false and misleading information aimed at concealing that earlier illegal conduct. Moreover, after hearing Mr. Anderson assert that he would hold debt collectors accountable for violations of the FDCPA, RT sought to prevent Mr. Anderson from learning the truth that previous illegal collection attempts had been made.

47. By providing false, deceptive, and misleading information to Mr. Anderson, Defendants violated 15 U.S.C. § 1692e, which provides that "[a] debt collector may not use ANY false, deceptive, or misleading representation or means in connection with the collection of any debt. Essentially, RT violated the FDCPA in order to intentionally cover up potential earlier violations of the FDCPA.

**Summary**

48. The above-detailed conduct by Defendant, of false, deceptive and abusive practices in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above-mentioned provisions of the FDCPA.

49. Plaintiffs have suffered damages as a result of these illegal collection efforts by these Defendants, including statutory damages, actual damages, attorneys fees and costs.

**TRIAL BY JURY**

50. Plaintiffs are entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

**CAUSES OF ACTION**

**COUNT I:  VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT  15 U.S.C. § 1692 et seq.**

51. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. The foregoing acts and omissions of each and every Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

53. As a result of each and every Defendant's violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

**COUNT I:  VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT  15 U.S.C. § 1692 et seq.**

a. for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiffs;

b. for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiffs;

c. for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiffs; and

d. for such other and further relief as may be just and proper.

Respectfully submitted,

Dated:  December 9, 2013

/s/ William T. Anderson
William T. Anderson, Esq. (#0388198)
Attorney for Plaintiff
P.O. Box 1179
Chanhassen, MN  55317
952-472-0987  Phone
952-472-0989  Fax
Email:  will.anderson@wtalaw.com